UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re:  LEROY CARRILLO and                                    No. 93-10091-j7
        BARBARA CARRILLO,

        Debtors.

**<u>MEMORANDUM OPINION</u>**

The Court held a final evidentiary hearing on April 8, 2025, on Debtor Leroy Carrillo's

Motion to Recover Funds Due to Attorney Misconduct (Embezzlement) (Fraud) (Legal

Malpractice) and Punitive Damages for Pain and Suffering ("Motion to Recover Settlement

Funds" – Doc. 68). Shortly before the final hearing date, Mr. Carrillo filed a Motion for

Immediate Relief, Summary Judgment, Asset Freeze, and Identification of Insurers and Bonds

("Motion for Immediate Relief" – Doc. 91). The Court determined that the evidence admitted at

the final hearing on the Motion to Recover Settlement Funds will apply to the Motion for

Immediate Relief to the extent the Motion for Immediate Relief raises the same legal and factual

issues raised in the Motion to Recover Settlement Funds.

Having carefully considered the evidence, and being sufficiently informed, the Court will

deny the Motion to Recover Settlement Funds. The settlement funds awarded to Mr. Carrillo in

connection with the bankruptcy case filed by the Roman Catholic Church of the Archdiocese of

Santa Fe ("ASF, "Archdiocese of Santa Fe," or "Archdiocese") were distributed in accordance

with the terms of ASF's confirmed chapter 11 plan, and Philip Montoya, Chapter 7 Trustee in

this bankruptcy case (the "Chapter 7 Trustee"), properly accounted for and distributed all of the

settlement funds received by the chapter 7 bankruptcy estate. Rothstein Donatelli LLP (Carolyn

M. "Cammie" Nichols), Special Counsel ("Attorney"), did not receive any funds from this

chapter 7 bankruptcy estate, and was paid for representing Mr. Carrillo and the Chapter 7 Trustee

in connection with the ASF bankruptcy case from the total settlement fund administered by the trustee appointed in the ASF bankruptcy case, and in accordance with the fee agreement that Mr. Carrillo signed.

## PROCEDURAL SUMMARY OF EVIDENCE

Exhibits A – G offered by Attorney were admitted without objection. The following witnesses testified:  James Stang, attorney for the unsecured creditors' committee in the ASF bankruptcy case; Sejal Kelly, Vice President of Administrative Services for Omni Agent Solutions, Inc.; Philip Montoya, Chapter 7 Trustee; Esther Lopez, Attorney's paralegal; and Attorney, Carolyn M. "Cammie" Nichols. The Court informed Debtor Leroy Carrillo, *pro se*, that unless he testified from the witness stand, anything else he said during the hearing would not constitute evidence. Mr. Carrillo presented argument and commentary and examined witnesses but chose not to testify.

With the parties' consent, the Court took judicial notice of the docket, documents filed of record, and the claims register in this bankruptcy case; the docket, documents filed of record, and the claims register in the ASF bankruptcy case; and the dockets, documents filed of record, and claims registers of other chapter 7 cases reopened as a result of the Order on Ownership of Certain Claims entered in the ASF bankruptcy case.[1]

## FINDING OF FACT

Pursuant to Fed. R. Civ. P. 52(a)(1), made applicable to this contested matter by Fed. R. Bankr. P. 7052 and Fed. R. Bankr. P. 9014(c), the Court makes the following findings of fact.[2]

---

[1] *See* Case No. 18-13027-t11 (Doc. 889).
[2] Any additional findings of fact contained in the Discussion section of this Memorandum Opinion not expressly set forth in the Findings of Fact section are hereby incorporated by reference into the Findings of Fact section and adopted as the Court's findings of fact made pursuant to Fed. R. Civ. P. 52(a)(1), Fed. R. Bankr. P. 7052 and Fed. R. Bankr. P. 9014(c).

*The commencement and closing of the Carrillos' chapter 7 bankruptcy case in 1993*

Leroy Carrillo Jr. and his spouse Barbara Carrillo commenced a voluntary chapter 7 case on January 11, 1993.[3] On January 26, 1993, the Carrillos filed their schedule of assets and liabilities.[4] The schedule of assets and liabilities filed in the chapter 7 case did not list any claim against ASF.[5] The schedule of assets and liabilities listed debts to twenty-two creditors holding unsecured nonpriority claims totaling $229,139.52, including a debt in the amount of $7,923.11 to Fred Martinez.[6] On April 20, 1993, the Chapter 7 trustee filed a report of no distribution in the bankruptcy case.[7] On May 11, 1993, the Court granted the Carrillos a discharge and closed the bankruptcy case.[8] Because of the Chapter 7 trustee's report of no distribution, no deadline was fixed for creditors holding pre-bankruptcy claims to file a proof of claim prior to the closing of the chapter 7 case.

*The Archdiocese of Santa Fe's chapter 11 case*

The Archdiocese of Santa Fe filed a voluntary petition under chapter 11 of the Bankruptcy Code on December 3, 2018.[9] ASF filed an amended plan of reorganization and an amended disclosure statement on November 22, 2022. *See* Debtor's First Amended Plan of Reorganization Dated November 3, 2022 ("Plan") and Amended Disclosure Statement to Accompany Debtor's First Amended Plan of Reorganization Dated November 3, 2022 ("Disclosure Statement").[10] The primary purposes of the Plan were to approve a global settlement of the claims of survivors of the abuse inflicted on children and teenagers perpetrated

---

[3] Case No. 93-10091-j7 (Doc. 1).
[4] *Id.* (Doc. 5).
[5] *Id.*
[6] *Id.*
[7] *Id.* (Doc. 13).
[8] *Id.* (Doc. 14).
[9] Case No. 18-13027-t11 (Doc. 1).
[10] *Id.* (Doc. 1151 and Doc. 1152).

-3-

by priests and others associated with the Archdiocese and to enable the Archdiocese to continue its operations.[11] The Plan provided for payment of compensation to abuse survivors from funds and properties contributed by ASF and other entities, including insurance carriers.[12] The Disclosure Statement explains the source of funds for the settlement as follows:

> The [Archdiocese] has worked since the Petition Date to obtain funding for a Plan by: (a) liquidating many of its assets; (b) obtaining contributions from the Settling Insurers pursuant to the Insurer Settlement Agreements and the Participating Religious Order Settlement Agreements; (c) obtaining contributions from others who may have liability for some of the Claims because of their relationships with the [Archdiocese], including the Parishes; (d) accepting donations from individuals and organizations who support the purpose of the Plan; and (e) obtaining loans.[13]

The funds accumulated to pay victim tort claims against ASF totaled $121,900,000.[14]

Approximately 370 tort claimants (about 99% of those who voted) voted to accept the plan.[15]

     *Leroy Carrillo's prior settlement of his tort claim against ASF*

     Prior to the filing of ASF's bankruptcy case, Mr. Carrillo received $40,000 from ASF in full settlement of his tort claim against ASF. After Mr. Carrillo retained Attorney to represent him, Attorney successfully argued in the ASF bankruptcy case that Mr. Carrillo's previous settlement with ASF should not prevent him from receiving additional settlement recovery funds as part of the ASF bankruptcy case.

     As part of the ASF bankruptcy case, an issue arose concerning ownership of claims of individual Tort Claimants[16] who had filed a bankruptcy case prior to the filing of ASF's

---

[11] Disclosure Statement, Case No. 18-13027-t11 (Doc. 1152).
[12] Plan, Case No. 18-13027-t11 (Doc. 1152).
[13] Disclosure Statement, at p. 6.
[14] *Id*. at pp. 8-9
[15] Tally of Ballots, Case No. 18-13027-t11 (Doc. 1210).
[16] *See* Plan, ¶ 3.145 (defining "Tort Claimant"); Case No. 18-13027-t11 (Doc. 1151)

-4-

bankruptcy case.[17] Interested parties, including the chapter 7 trustees of the affected chapter 7 cases, the Tort Claimants, and the Official Committee of Unsecured Creditors ("UCC") in the ASF bankruptcy case, filed briefs.[18] The UCC later withdrew its brief,[19] and all other responses opposing the chapter 7 trustees' position were also either withdrawn or resolved by stipulation.[20] On December 2, 2021, the bankruptcy court entered an Order on Ownership of Certain Claims, which determined, among other things, that if a Tort Claimant who had previously filed a bankruptcy case did not schedule the tort on the Tort Claimant's bankruptcy schedules, the tort claim is property of the Tort Claimant's bankruptcy estate under 11 U.S.C. § 541.[21] As a result, several Tort Claimants' chapter 7 bankruptcy cases, including the Carrillos' chapter 7 bankruptcy case, were reopened.

*Leroy Carrillo's retention of Attorney*

On June 17, 2019, Mr. Carrillo and Attorney entered into an Archdiocese of Santa Fe Bankruptcy Claimant Engagement Agreement ("Fee Agreement")[22] in which Mr. Carrillo agreed to retain Attorney to represent him in the ASF bankruptcy case. The Fee Agreement provides for fees of 33 1/3% of the gross amount recovered for Mr. Carrillo, plus costs and expenses, and applicable gross receipts taxes.[23] Mr. Carrillo maintains that he signed the Fee Agreement under duress and that he wrote "signed under duress" under his signature line on the Fee Agreement. The Court heard testimony regarding the circumstances surrounding execution of the Fee Agreement. Attorney produced the original Fee Agreement in open court. It nowhere bore the

---

[17] *See* Order Setting Briefing Schedule on Ownership of Claims of Individual Claimants who Filed Bankruptcy before this Case was Filed. Case No. 18-13027-t11 (Doc. 683).
[18] Case No. 18-13027-t11 (Docs. 711, 712, 713, 715, 721, and 724).
[19] *Id.* (Doc. 867).
[20] *Id.* (Docs. 745 (later withdrawn), 768, 781, and 783).
[21] *Id.* (Doc. 889).
[22] Exhibit A.
[23] *See* Fee Agreement, ¶¶ 4, 5, and 6.

-5-

notation "signed under duress." Mr. Carrillo then contended there were duplicate originals, that he wrote "signed under duress" on one of the originals, and that Attorney destroyed that original. No evidence was presented to the Court that Mr. Carrillo signed the Fee Agreement under duress or that the language "signed under duress" was written on the Fee Agreement when he signed it. Attorney credibly testified that had Mr. Carrillo signed the Fee Agreement with the notation "signed under duress," as he claims, Attorney would not have undertaken representation of Mr. Carrillo. The Court finds that the language "signed under duress" was not written on the Fee Agreement when Mr. Carrillo signed it. The Court also finds that Mr. Carrillo did not sign the Fee Agreement under duress.

Attorney represented Mr. Carrillo throughout the ASF bankruptcy case. Throughout Attorney's representation, she and employees in her law firm kept Mr. Carrillo informed about the progress of the ASF bankruptcy case, the anticipated settlement recovery amounts, and the reopening of the Carrillos' chapter 7 bankruptcy case. Attorney and Esther Lopez, Attorney's paralegal, met with Mr. Carrillo several times in an effort to explain the settlement recovery amounts. Attorney informed Mr. Carrillo that he would not have to pay attorneys' fees and expenses from the *net* settlement recovery amount (i.e. Mr. Carrillo's settlement amount calculated after deducting attorney's fees) but did not tell Mr. Carrillo that Attorney would not be paid for Attorney's representation of Mr. Carrillo. Attorney had the same fee arrangement with Mr. Carrillo as Attorney had with approximately forty other clients she represented in the ASF bankruptcy case.

Both Attorney and her paralegal, Esther Lopez, made every effort to communicate with Mr. Carrillo throughout Attorney's representation of Mr. Carrillo and after the settlement was

reached, meeting with him in person and by telephone, even sharing their personal cell phone numbers with him so he could reach them as needed.

*The ASF Plan*

The bankruptcy court confirmed ASF's Plan on December 28, 2022.[24] The confirmed Plan provided for the creation of two trusts: the ASF Settlement Trust and the Unknown Tort Claims Trust.[25] Tort Claimants, as that term is defined in the Plan, including Leroy Carrillo, were to be paid settlement amounts from the ASF Settlement Trust in accordance with the terms of the Tort Claims Allocation Protocol and ASF Settlement Trust Documents.[26] Omni Management Group, LLC (now known as Omni Agent Solutions, Inc.) ("Omni" or "ASF Settlement Trustee") was appointed trustee of the ASF Settlement Trust.[27] Distribution amounts payable to the Tort Claimants were determined pursuant to the Tort Claims Allocation Protocol. Under the Plan and the Tort Claims Allocation Protocol, Judge William L. Bettinelli (retired) was appointed to review all known tort claims and assign each Tort Claimant a point total after taking into account factors set forth in the Tort Claims Allocation Protocol.[28] The value of each point was calculated by dividing the total of the funds contributed to the ASF Settlement Trust by the total points awarded to all Tort Claimants.[29]

---

[24] Case No. 18-13027-t11 (Doc. 1214).
[25] Plan; Case No. 18-13027-t11 (Doc. 1151)
[26] *Id.* at Section 8.
[27] The Plan defines the ASF Settlement Trustee as "Omni Management Group, LLC or any successor duly appointed pursuant to the terms of this Plan and the ASF Settlement Trust Agreement." Plan, ¶ 3.22. The Declaration of Sejal Kelly, Vice President of Administrative Services at Omni Agent Solutions, Inc. (Exhibit G), states that Omni Agent Solutions, Inc., formerly known as Omni Management Acquisition Corp., is the trustee of the ASF Settlement Trust.
[28] Tort Claims Allocation Protocol for Tort Claims Filed in the Chapter 11 Case of the Roman Catholic Church of the Archdiocese of Santa Fe ("Tort Claims Allocation Protocol"),¶¶ 4, 5, and 6; Case No. 18-13027-t11 (Doc. 1151-8). Plan, ¶ 3.147 (defining Tort Claims Reviewer as the Honorable William L. Bettinelli (retired)).
[29] *Id.* at ¶ 6.

The confirmed Plan provides for the ASF Settlement Trustee to subtract from the total consideration paid into the ASF Settlement Trust all attorneys' fees, costs, and applicable gross receipts taxes for all counsel representing Tort Claimants[30] based on each Tort Claimant's calculated distribution amount.[31] In accordance with the confirmed Plan, all fees, costs, expenses, and associated gross receipts taxes were deducted from the total settlement recovery fund before the settlement recovery amounts for each Tort Claimant were allocated from the remaining funds based on the Tort Allocation Protocol. Attorneys' fees, costs, and applicable gross receipts taxes incurred by the Tort Claimants were to be paid to attorneys directly from the ASF Settlement Trust.[32] In this way, because the earned fees, costs, expenses, and associated gross receipts taxes were taken off the top of the entire settlement recovery funds before the remaining funds were allocated to each Tort Claimant, Tort Claimants who were not represented by counsel bore some of the cost of the attorneys' fees, costs, and applicable gross receipts taxes of represented Tort Claimants.

All counsel representing Tort Claimants in the ASF bankruptcy case were paid based on their individual fee agreements with their clients. Where the fee agreement provided for a contingency fee, the contingency fee was based on the calculated gross settlement amount for each claimant. By calculating the fees this way, no Tort Claimant paid more in attorneys' fees

---

[30] The Plan defines "Qualified Counsel" as "an attorney representing a Tort Claimant who has entered into a written retainer or fee agreement with such Tort Claimant on or before the Effective Date; provided such attorney agrees that the attorney's receipt of Qualified Counsel Fees is credited against the fees owed by such Tort Claimant." Plan, ¶ 3.129.

[31] Plan, ¶ 8.1.10 provides, in relevant part:

    Before making any Distribution(s) to Class 3 Tort Claimants on account of their Class 3 Tort Claims, the ASF Settlement Trustee will subtract all Qualified Counsel Fees, plus applicable gross receipts tax in an amount equal to the total fees payable to Qualified Counsel based on the Distributions calculated under the Tort Claims Allocation Protocol from the consideration paid by the Funding Group to the ASF Settlement Trust.

[32] *Id.* ("The ASF Settlement Trust shall pay such fees to Qualified Counsel . . . .").

than the amount the Tort Claimant agreed to pay in the Tort Claimant's individual fee agreement with retained counsel.

*The notices of anticipated settlement recovery awards*

A representative of Omni sent Mr. Carrillo two letters regarding Mr. Carrillo's net final award. A letter dated March 2, 2023, informed Mr. Carrillo that his net final award is $231,574.59 if ASF contributes an additional $5.4 million to the ASF Settlement Trust, and anticipates that Mr. Carrillo will receive his share in April of 2023.[33] A second letter dated April 7, 2023, explains that Mr. Carrillo's last and final distribution from the ASF Settlement Trust is $11,425.03.[34] A post-confirmation order entered in the ASF bankruptcy case clarified that notice of a Tort Claimant's monetary distribution is "**net of attorney's fees, costs and taxes thereon, and net of any adjustments provided for in the First Amended Plan**, which distribution may be greater or smaller than the actual distribution to be received based on any reconsideration of claims."[35] The amounts reported in these notices were estimates, net of attorneys' fees, costs, and taxes thereon.

*The distribution of settlement recovery awards*

Omni, as ASF Settlement Trustee of the ASF Settlement Trust, calculated the allocation of settlement funds to Tort Claimants based on the Tort Claims Allocation Protocol. In accordance with the confirmed Plan, all fees, costs, expenses, and associated gross receipts taxes were deducted from the total settlement recovery fund before the settlement recovery amounts for each Tort Claimant were allocated from the remaining funds based on the Tort Claims

---

[33] Exhibit C.
[34] Exhibit D.
[35] Order Approving Motion for Approval of Non-Material Modification of ASF Settlement Trust Agreement and Unknown Tort Claims Trust Agreement, Case No. 18-13027-t11 (Doc. 1245). The related motion is Doc. 1238.

-9-

Allocation Protocol. Unrepresented parties thus bore a portion of the representation costs because the earned fees, costs, expenses, and associated gross receipts taxes were taken off the top of the entire settlement recovery funds before the remaining funds were allocated to each Tort Claimant.

The ultimate settlement recovery amounts for each claimant required recalculation from time to time based on requests from some Tort Claimants for Judge Bettinelli to re-evaluate their claims, and other variables, not to mention the sheer number of Tort Claimants that participated in the settlement funds recovery based on Judge Bettinelli's review of the claims and the allocation of the funds contributed to the ASF Settlement Trust by ASF and other entities, including insurance carriers. Omni prepared draft worksheets calculating settlement recovery amounts for each Tort Claimant that were revised to reflect the recalculations.

One of the draft worksheets created by Omni includes the following calculation of Mr. Carrillo's claim:[36]

| Prior Reduction Settlement | Contin-gency Fee | GRT | Gross Distribution to all Claimants | Allocated Contingency Fee and GRT Fee | Reimburs-able cost reduction | Net Dist. to Claimants | Allocated Contingency Fee Reduction | Allocated prior settlement reduction | Net Distribution |
|---|---|---|---|---|---|---|---|---|---|
| $40,000 | 33.333% | 7.75% | $416,604.88 | $143,766.40 | (1,119.79) | $271,718.69 | $483.90 | $546.81 | $232,749.41 |

Sejal Kelly, Vice President of Administrative Services for Omni, Inc., who testified at the final hearing, could not explain these figures or the import of the column categories with any specificity. Attorney received several versions of this calculation from Omni in connection with the ASF bankruptcy case. Exhibit B was the last iteration of the calculation form created by Omni that Attorney received. Attorney shared this information with Mr. Carrillo.

Omni's final records show the following figures for Mr. Carrillo's claim:[37]

Gross Distribution                          $415,252.69

---

[36] Exhibit B.
[37] Exhibit G.

| | |
|---|---|
| Allocated Contingency Fee and GRT | ($143.043.53) |
| Reimbursable Cost Reduction | ($1,116.90) |
| Allocated Contingency Fee Reduction | $482.33 |
| Prior Settlement Reduction | ($40,000) |
| Dist 1 Underpayment Adj. Reduction | ($153.00) |
| | |
| Net Distribution: | **$231,420.89** |

Omni paid Attorney's contingency fee, plus appliable gross receipts taxes together totaling $143,043.53, as well as the reimbursable costs in the amount of $1,115.90, directly to Attorney from the ASF Settlement Trust.

*The reopening of the Carrillos' chapter 7 bankruptcy case*

On October 13, 2021, the Carrillos' chapter 7 case was reopened. Ron Holmes appeared as counsel for the Carrillos in the reopened chapter 7 case.[38] Philip Montoya was appointed chapter 7 Trustee in the Carrillos' reopened bankruptcy case.[39] With Court approval granted by an order entered December 9, 2022, the Chapter 7 Trustee retained Attorney as special counsel to represent him in the ASF bankruptcy case under a fee agreement mirroring the Fee Agreement between Attorney and Mr. Carrillo.[40] The Chapter 7 Trustee also retained Askew & White, LLC ("A & W") as general counsel for the Chapter 7 Trustee.[41]

In the ASF bankruptcy case, A&W, not Attorney, represented chapter 7 trustees who would be appointed if the cases of Tort Claimants who had filed their own chapter 7 cases were reopened, including the Chapter 7 Trustee, on the issue of ownership of the tort claims, arguing that the tort claims were property of the estates in the Tort Claimants' chapter 7 cases.[42] Attorney did not represent the Chapter 7 Trustee in the ASF bankruptcy case on that issue. To the contrary,

---

[38] *See, e.g.,* Minutes from March 2, 2023 status conference. Case No. 93-10091-j7 (Doc. 36).
[39] Case No. 93-10091-j7 (Doc. 16).
[40] *Id.* (Docs. 26, 29).
[41] *Id.* (Doc. 24).
[42] Case N. 18-13207-t11 (Docs. 711, 889).

she argued in the ASF case against a determination that the claims of Tort Claimants who had filed their own chapter 7 cases were property of the chapter 7 estates.[43] The bankruptcy court ruled that such claims were the property of the chapter 7 estate if the Tort Claimant did not schedule the claim in the chapter 7 case.[44]

A & W filed two fee applications in the Carrillos' chapter 7 bankruptcy case, which together requested approval of compensation in the total amount of $4,171.76.[45] The Court approved both of A & W's fee applications.[46] Attorney did not file a fee application in the Carrillos' chapter 7 bankruptcy case.

Omni paid the Net Distribution amount of $231,420.89 for Mr. Carrillo to Philip Montoya, Chapter 7 Trustee of the Carrillos' bankruptcy estate from the ASF Settlement Trust it administered.[47] The Chapter 7 Trustee filed a Report of Assets and sent a notice to all creditors informing them that there may be assets from which a distribution may be paid and fixing a deadline for creditors to file a proof of claim if they wished to receive a distribution from the estate.[48]

One creditor, attorney Fred C. Martinez, filed a proof of claim in the reopened chapter 7 case.[49] None of the other creditors listed in the bankruptcy case filed proofs of claim. Mr. Martinez filed an amended proof of claim in the amount of $9,824.06 that included the amount of a judgment against the Carrillos entered July 11, 1991 ($7,923.11 plus costs of $89.81) and

---

[43] *Id.* (Doc. 724).
[44] *Id.* (Doc. 889).
[45] *Id.* (Docs. 42 and 44).
[46] *Id.* (Docs. 48 and 49).
[47] Exhibit E and Exhibit G.
[48] Case No. 93-10091-j7(Doc. 18 and docket entries).
[49] Claims Register, Case No. 93-10091-j7 (Claim 1-1).

-12-

pre-petition interest on the judgment. Mr. Martinez's claim is based on legal services; a copy of a recorded transcript of judgment for those legal fees is attached to the amended proof of claim.[50]

On March 29, 2023 the Court entered an order in the Carrillos' chapter 7 bankruptcy case authorizing the Chapter 7 Trustee to disburse settlement funds he received from the ASF Settlement Trust to Mr. Carrillo as an interim distribution from the bankruptcy estate. *See* Default Order Granting Chapter 7 Trustee's Motion to Approve Acts Necessary to Liquidate Tort Claim and Authorize Interim Distribution ("Order Authorizing Interim Distribution").[51] The Order Authorizing Interim Distribution states that the Settlement Trustee (Omni) "is required to subtract attorney's fees and costs, and tax thereon for [Attorney] 'off the top' of the [ASF] Trust *res*, and pay such amounts to [Attorney], before making a distribution to the [Carrillo chapter 7] estate on the tort claim."[52] The Chapter 7 Trustee disbursed the total funds received into the chapter 7 estate as follows:[53]

| Recipient | Reason | Amount |
|---|---|---|
| A & W | Attorneys' fees for representing Chapter 7 Trustee in the Carrillos' reopened bankruptcy case[54] | $2,304.19 |
| A & W | Attorneys' fees for representing Chapter 7 Trustee in the Carrillos' reopened bankruptcy case[55] | $1,867.57 |
| Philip Montoya | Chapter 7 Trustee's fees, and expenses[56] | $13,411.79 |

---

[50] *Id.* (Claim 1-2).
[51] Case No. 93-10091-j7 (Doc. 41).
[52] Order Authorizing Interim Distribution, ¶ 8. Case No. 93-10091-j7 (Doc. 41).
[53] Case No. 93-100910j7: Trustee's Final Report (Doc. 50); Trustees final Report (TFR) (Doc. 52). Trustee's Final Account and Distribution Report Certification that the Estate has been Fully Administered (Doc. 54); *see also* Exhibit E and Exhibit F.
[54] Case No. 93-10091-j7 (Doc. 48).
[55] *Id.* (Doc. 49).
[56] *Id.* (Doc. 53).

| Fred C. Martinez | Proof of Claim 1-2 (includes interest in the amount of $10,930.71) | $20,754.77 |
| Bank Service Fees | Bank charges incurred by the Chapter 7 estate | $541.10 |
| Bond Payments – International Sureties, Ltd. | Chapter 7 Trustee's bond | $56.37 |
| Leroy Carrillo | Payment of settlement funds | $177,059.64 |
| Leroy Carrillo and Barbara Carrillo | Payment of surplus from estate | $15,425.46 |
| | **TOTAL:** | **231,420.89** |

The Chapter 7 Trustee's reports reflect gross total receipts of $375,581.32,[57] which includes the fees and expenses and applicable gross receipts taxes paid to Attorney, even though Attorney received her compensation for representing Mr. Carrillo in connection with the ASF bankruptcy case directly from Omni.

The Chapter 7 Trustee disbursed $177,059.64 to Mr. Carrillo in accordance with the Order Authorizing Interim Distribution.[58] After payments of the Martinez claim and all administrative expenses, the Chapter 7 Trustee disbursed the remainder of the funds in the bankruptcy estate, in the total amount of $15,425.46, to Mr. and Mrs. Carrillo. In total, Mr. Carrillo received $192,485.10 from the ASF settlement funds received by the Chapter 7 Trustee on account of Mr. Carrillo's claim against ASF in addition to the $40,000 he was paid under his original settlement with ASF. In addition, Mr. Carrillo received the benefit of the attorney's fees, costs, and gross receipt taxes that Omni paid to Attorney because it discharged Mr. Carrillo's obligations under the Fee Agreement.

## JURISDICTION AND BURDEN OF PROOF

The jurisdiction of the bankruptcy court is limited. *See Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1517 (10th Cir. 1990) (per curiam) ("Bankruptcy Courts have only the

---

[57] *See, e.g.,* Exhibit F, p. 3.
[58] Case No. 93-10091-j7 (Doc. 41).

-14-

jurisdiction and powers expressly or by necessary implication granted by Congress."). The jurisdictional grant to bankruptcy courts under 28 U.S.C. § 1334 authorizes bankruptcy courts to adjudicate "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The Motion to Recover Settlement Funds and the Motion for Immediate Relief relate to the receipt and disbursement of settlement funds awarded to Mr. Carrillo in connection with the ASF bankruptcy case. Mr. Carrillo's settlement funds, net of attorneys' fees, costs, and associated gross receipts taxes paid to Attorney, were deposited into the chapter 7 bankruptcy estate for administration by the Chapter 7 Trustee. Mr. Carrillo contends that none of the settlement funds should have been paid to Attorney or used to pay chapter 7 administrative expenses or to pay creditors. Because Mr. Carrillo's contentions question the propriety of the transfer of funds to the Chapter 7 Trustee and the disposition of the settlement funds from his chapter 7 bankruptcy estate, the Court has jurisdiction to decide the Motion to Recover Settlement Funds and the Motion for Immediate Relief under 28 U.S.C. § 1334(b) as "core" matters "concerning the administration of the estate." 28 U.S.C. § 157(b)(1)(2)(A). As the moving party, Mr. Carrillo bears the burden of proving the facts necessary to obtain the relief he seeks. *See In re Irwin*, 558 B.R. 743, 750 (Bankr. E.D. Pa. 2016) (the moving party in a contested matter bears the burden of proof); *In re Maylin*, 155 B.R. 605, 614 (Bankr. D. Me. 1993) ("Generally, a movant bears the burden of proof on the elements necessary to warrant the relief he or she seeks.").

## DISCUSSION

Mr. Carrillo's claims can generally be summarized as follows:

1. Attorney "stole" the settlement recovery funds awarded to him in the ASF bankruptcy case by charging him attorneys contrary to (a) what Attorney told him – that ASF would pay the attorney's fees so that he would be represented free of charge to him,

-15-

and (b) the requirement that victim settlement recovery funds can only be used for a victim's recovery.

2. Attorney informed Mr. Carrillo of at least seven different settlement recovery amounts, which shows that he did not receive the total settlement recovery amount to which he was entitled.

3. This chapter 7 bankruptcy case should never have been reopened. Attorney did not properly represent his interests in the ASF bankruptcy case to resist the reopening of the Carrillos' chapter 7 bankruptcy case.

4. Attorney did not protect him, failed to keep him informed, and failed to act in his best interest in breach of Attorney's fiduciary duty to him.

For the reasons set forth below, the Court concludes that neither the evidence nor the law supports these claims. Any additional claims asserted in the Motion to Recover Settlement Funds not expressly enumerated above, such as claims of embezzlement, fraud, and legal malpractice, are predicated on the same set of facts; the Court has thus necessarily considered those claims and concludes that they are without merit.

*Attorney properly charged Mr. Carrillo and the Chapter 7 Trustee for attorney's fees*

Mr. Carrillo claims that Attorney "stole" settlement recovery funds awarded to him in the ASF bankruptcy case; that Attorney told him he would not be charged for any attorney's fees; that he signed the Fee Agreement under duress and never agreed to pay attorney's fees; and that Attorney breached her fiduciary duty to him by stealing part of his settlement award. Mr. Carrillo also contends that settlement recovery funds can only be used for a victim's recovery, specifically, his recovery, such that no portion of the settlement recovery funds can be used for any other purpose, including payment of attorney's fees.

The signed Fee Agreement is a contract pursuant to which Mr. Carrillo expressly agreed to pay Attorney a contingency fee of 33 1/3 % of the gross recovery, plus costs and expenses, plus applicable gross receipts taxes on such amounts, for her representation of him in the ASF

-16-

bankruptcy case. Per the Fee Agreement, the contingency fee Mr. Carrillo agreed to pay was a percentage of the gross settlement award to Mr. Carrillo. Attorney was paid in accordance with the signed Fee Agreement based on Omni's calculation of the gross settlement amount as determined under the Tort Claims Allocation Protocol. Attorney did not steal any money from Mr. Carrillo. She was paid the amount Mr. Carrillo agreed to pay her under the Fee Agreement.

The Court in the ASF case determined that Mr. Carrillo's claim against ASF, and any recovery on that claim, was property of the estate in Mr. Carrillo's chapter 7 case (*see* the discussion of property of the estate, *infra*). For that reason, the Chapter 7 Trustee retained Attorney as special counsel to represent him in the ASF bankruptcy case with respect to the Carrillo claim in that case that was property of the chapter 7 estate. Mr. Carrillo and the Chapter 7 Trustee had a common interest to maximize Mr. Carrillo's recovery in the ASF case. Attorney charged only one 33 1/3% contingency fee (plus costs and expenses and applicable gross receipts taxes) on Mr. Carrillo's settlement amount, which attorney was paid before the balance of the recovery on account of the Carrillo claim was paid by the ASF Settlement Trustee to the Chapter 7 Trustee.

Mr. Carrillo contends that settlement recovery funds can only be used for a victim's recovery and cannot be used to pay attorney's fees. That is not the law. Sexual abuse victims, like other tort victims who do not have the financial resources to pay an attorney on an ongoing basis for legal representation, or who do not wish to take the financial risk of owing attorney's fees even if their claims are not successful, can retain counsel on a contingency fee basis. Use of a portion of a victim's recovery to pay attorney's fees incurred to obtain the recovery is consistent with the public policy of using victim recovery funds to benefit the victim. In Mr. Carrillo's case, if he had decided not to retain counsel on a contingency fee basis and instead acted without a

lawyer, he very well may have been stuck with the $40,000 settlement he reached with ASF before he retained Attorney. Instead, Mr. Carrillo benefitted from his retention of Attorney. His net recovery, after payment of Attorney's fees, and after payment of creditors and administrative expenses in his reopened chapter 7 case, was approximately $232,500 (including the $40,000 he was already paid).[59]

*The various estimates of Mr. Carrillo's settlement recovery amount do not show that
Mr. Carrillo failed to receive the total settlement recovery amount to which he was entitled*

Mr. Carrillo also complains that he was informed of at least seven different settlement recovery amounts, suggesting that somehow the varying amounts indicate that he did not receive the total settlement recovery amount to which he was entitled. Omni recalculated settlement recovery amounts for individual claimants from time to time after Judge Bettinelli re-evaluated certain claims and for other reasons, resulting in revised settlement recovery amount worksheets. The changes in estimated settlement recovery amounts did not reflect any wrongdoing.

Nevertheless, the Court acknowledges that the various gross settlement recovery amounts reported in Exhibit B, the two notices sent by Omni to Mr. Carrillo, and the amounts reported in the Chapter 7 Trustee's reports are not only confusing, but appear inconsistent. For example, the Chapter 7 Trustee's report reflects a "gross settlement amount" of $375,581.32,[60] which approximates the gross recovery amount reported in Ms. Kelly's affidavit, less the $40,000 Mr. Carrillo received in settlement prior to the filing of ASF's bankruptcy case, but not to the penny. The gross settlement recovery figure in Exhibit B, which is the last chart Attorney received from Omni, does not match the gross settlement figure in Ms. Kelly's affidavit.[61]

---

[59] *See* Exhibit F (reflecting disbursements to Mr. Carrillo of $177,059.64 and $15,425.10, together totaling $232,485.10).
[60] *See* Exhibit F.
[61] *See* Exhibit G.

-18-

Nor can the Court decipher with certainty how Attorney's fee, plus applicable gross receipts taxes were calculated. Attorney received $143,043.53, which included fees plus applicable gross receipts taxes at the rate of 7.75%, yet 33 1/3% of the gross figure reported in Ms. Kelly's affidavit is $138,403.72. Gross receipts taxes on fees in the amount of $138,403.72 at the rate of 7.75% would total $10,726.29, which together totals $149,130.00. That figure is *greater* than the amount Attorney actually received in payment of fees and associated gross receipts taxes.

Despite the confusing figures, there is absolutely no evidence that Attorney misappropriated Mr. Carrillo's settlement recovery funds. Omni served as trustee of the ASF Settlement Trust appointed in accordance with the confirmed ASF Plan. Omni calculated the settlement recovery funds for each claimant and calculated the attorneys' fees, costs, expenses, and associated gross receipts taxes based on the fee agreements with each represented Tort Claimant.

### *Mr. Carrillo's chapter 7 bankruptcy case was properly reopened and the bankruptcy estate assets were properly administered*

Next, Mr. Carrillo complains about the reopening of this chapter 7 bankruptcy case and asserts that Attorney did not properly represent his interest in the ASF bankruptcy case to resist that result. He contends that his case should not have been reopened thirty years after it was initially filed, long after the Carrillos received a bankruptcy discharge. Mr. Carrillo improperly equates a bankruptcy discharge with extinguishing debt. He appears to reason that if his prepetition debt was extinguished thirty years ago, then reopening the bankruptcy case to pay creditors whose debts were extinguished long ago serves no purpose. This reasoning is not correct. The ruling in the ASF case that resulted in reopening the Carrillo chapter 7 case was correct. Attorney could not successfully resist the reopening of this chapter 7 bankruptcy case.

-19-

As the bankruptcy court found in the ASF case,[62] the law required Mr. Carrillo's bankruptcy case to be reopened to administer the funds recovered as the result of a pre-bankruptcy claim (Mr. Carrillo's tort claim against ASF) that was not disclosed in the original schedules filed in this chapter 7 bankruptcy case. The Court is not suggesting that Mr. Carrillo intentionally did anything wrong in his chapter 7 case. He is a victim. To understand why the law required that the Carrillos' chapter 7 case be reopened thirty years after it was closed requires some understanding of (i) property of the bankruptcy estate, (ii) the effect of the bankruptcy discharge, and (iii) the effect of closing a bankruptcy case on property of the estate.

1)  *Property of the bankruptcy estate*

Upon the filing of a bankruptcy petition to commence a bankruptcy case, a bankruptcy estate is created, which is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Property of the bankruptcy estate includes all claims of the debtor against others that arise prior to the commencement of the bankruptcy case, known or unknown, regardless of whether a claim is listed in the debtor's bankruptcy schedules.

A debtor must list all known assets on his or her bankruptcy schedules that become property of the bankruptcy estate upon the commencement of the debtor's bankruptcy case. *See* 11 U.S.C. § 521(a)(1) (requiring the debtor to file a schedule of assets). "'[T]he bankruptcy estate includes, with enumerated exceptions, 'all legal or equitable interests of the debtor in property as of the commencement of the case.'" *In re Dittmar*, 618 F.3d 1199, 1207 (10th Cir. 2010) (quoting 11 U.S.C. § 541(a)(1)). "[T]he scope of § 541 is broad and should be generously construed, and . . . an interest may be property of the estate even if it is 'novel or contingent.'"

---

[62] *See* Order on Ownership of Certain Claims, Case No. 18-13027-t11 (Doc. 889).

-20-

*Id.* (quoting *Parks v. FIA Card Servs., N.A.*, 550 F.3d 1251, 1255 (10th Cir. 2008)). "[E]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within reach of 11 U.S.C. § 541." *Dittmar*, 618 F.3d at 1207 (quoting *In re Yonikus*, 996 F.2d 866, 869 (7th Cir.1993)). Thus, the duty to disclose all assets "encompasses disclosure of all claims and causes of action, pending or potential, which a debtor might have." *Eastman v. Union Pac. R. Co.*, 493 F.3d 1151, 1159 (10th Cir. 2007).

Mr. Carrillo's tort claim, based on a wrong occurring prior to the commencement of his chapter 7 case, was property of the bankruptcy estate in this case regardless of whether the claim had accrued for statute of limitations purposes under applicable state law. Since contingent claims, which include claims that have not yet accrued, are property of the estate under 11 U.S.C. § 541, accrual of a cause of action for statute of limitations or other purposes is not required for there to be a legal or equitable interest in such claim sufficient for that claim to become part of a bankruptcy estate. Causes of action that exist on the petition date, including sexual abuse tort claims, accrued or unaccrued for statute of limitations purposes, are property of the bankruptcy estate. *See Sender v. Simon*, 84 F.3d 1299, 1305 (10th Cir. 1996) ("[C]auses of action belonging to the debtor at the commencement of the bankruptcy case [fall within 11 U.S.C. § 541(a)(1)].").

Mr. Carrillo's claim against ASF is based on wrongs committed against him before he filed his chapter 7 case. The claim, and any recovery on the claim, thus became property of the bankruptcy estate in the chapter 7 case.

Because Mr. Carrillo's claim against ASF is based on wrongs committed against him, Mr. Carrillo takes issue with calling that claim an "asset." The law, nevertheless, is that claims arising from wrongful acts that took place before the bankruptcy case is filed are property of the bankruptcy estate regardless of whether such claims are for breach of contract or a wrongful act

-21-

against the debtor. Mr. Carrillo's tort claim against ASF, and any recovery on the claim, became property of his bankruptcy estate regardless of whether he listed the claim as an asset in his bankruptcy schedules and regardless of whether he was aware of the claim.

2) *The effect of the Carrillos' chapter 7 discharge*

Unless a debt is excepted from the discharge, a discharge granted in a voluntary chapter 7 case discharges an individual debtor from, among other things, all debts that arise before the chapter 7 case is commenced. 11 U.S.C. § 727(b).[63] The Carrillos were granted a discharge in their chapter 7 case of debts that arose before they filed their bankruptcy case on January 11, 1993.[64]

A discharge "operates as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. § 524(a)(2). However, the discharge does not extinguish any debt. The debts still exist. The discharge only prevents collection of discharged debts as a personal liability of the debtor.[65] This means that the discharge does not affect what constitutes property of the bankruptcy estate, nor does the discharge prevent a creditor from collecting the discharged debt from its share of a distribution to creditors from property of the estate.[66] Further, the discharge does not prevent collection of a debt by enforcement of a lien

---

[63] In a voluntary bankruptcy case, the date of the order for relief is the same as the date of commencement of the bankruptcy case. 11 U.S.C. § 301(a), (b); *see also In re Wilkinson*, 507 B.R. 742, 746 (Bankr. D. Kan. 2014) ("The filing with the Bankruptcy Court of a petition for relief commences a voluntary case; further, the commencement of the voluntary case constitutes an order for relief under the chapter of the Code under which the petition is filed."); *In re Nelson*, No. 11-09-10363 MA, 2009 WL 2876286, at *3 n.2 (Bankr. D.N.M. May 17, 2009) ("The date of filing of the voluntary petition is the date of the order for relief.").
[64] Case No. 93-10091-j7 (Doc. 14).
[65] *Wiles v. Wise (In re Wiles)*, No. 02-21206, 2011 WL 160694, at *4 (Bankr. N.D.W. Va. Jan. 19, 2011) ("Importantly, a discharge in bankruptcy does not extinguish debt—the debt is still in existence—only the debtor's personal liability for the payment of that debt is discharged by the Bankruptcy Code.")
[66] *In re Mosby*, 244 B.R. 79, 87 n.13 (Bankr. E.D. Va. 2000) ("[T]he granting of a discharge in a case does not extinguish a creditor's right to distributions from the bankruptcy estate . . . .").

-22-

against the debtor's property (that is, an *in rem* claim) that survives the bankruptcy case.[67] The personal liability protected by the discharge prevents collection of any deficiently liability of the debtor, after lien foreclosure, from the debtor's other assets.

Accordingly, the discharge granted to the Carrillos did not extinguish any of their debts but instead prevents their prebankruptcy unsecured creditors from collecting the discharged debts from the Carrillos' assets that are not property of the estate in their chapter 7 case.

3) *Mr. Carrillo's claim against ASF remained property of the bankruptcy estate after the chapter 7 case was closed*

Even though the Carrillos were granted a discharge and their chapter 7 case was closed in 1993, their pre-bankruptcy creditors were still entitled to be paid from the recovery from Mr. Carrillo's tort claim against ASF, which remined property of the estate after discharge and closing. The Carrillos' chapter 7 bankruptcy case had to be reopened because Mr. Carrillo's claim against ASF remained property of the bankruptcy estate that was not administered before the chapter 7 case was closed and the schedules the Carrillos' filed in the chapter 7 case listed debts owing to creditors.

Assets listed in a debtor's schedules that are not administered by the chapter 7 trustee are abandoned to the debtor upon case closing. 11 U.S.C. § 554(c). The claim against ASF, for example, would have been administered by the chapter 7 trustee if the claim had been listed in the Carrillos' original bankruptcy schedules and the trustee had sold or recovered damages on the claim before the case was closed. However, if a debtor does not list a claim in his bankruptcy schedules and the claim is not administered by the chapter 7 trustee, then that claim, and any recovery on the claim, is not abandoned from the estate to the debtor upon the closing of the

---

[67] *Phillips v. IRS (In re Phillips)*, 620 B.R. 287, 295 (Bankr. W.D. Tenn. 2020) ("[V]alid, pre-petition liens pass through a bankruptcy notwithstanding the discharge of the personal liability of the debtor.").

bankruptcy case. Such claim, if not administered by the chapter 7 trustee, remains property of the bankruptcy estate even after the bankruptcy case has been closed. *Brumfiel v. U.S. Bank*, 618 Fed. App'x 933, 937 (10th Cir. 2015) ("Because [debtor] did not list the claims in her asset schedules, the trustee neither administered them nor abandoned them at the close of the bankruptcy case, and they remained property of the bankruptcy estate.").

The Carrillos did not list the claim against ASF in their bankruptcy schedules; nor did the Chapter 7 Trustee administer the claim before the case was closed in 1993. As a result, the claim and any recovery on the claim remained property of the bankruptcy estate in the Carrillos' chapter 7 after the case was closed. The recovery on the claim from the ASF bankruptcy case (net of Attorney's fee) was property of the estate in the chapter 7 case. The Carrillos' pre-bankruptcy creditors remained entitled to collect the debts owing to them (which were not extinguished by the discharge) from their share of a distribution to creditors from the settlement of Mr. Carrillo's tort claim in the ASF bankruptcy case that remained property of the Carrillos' chapter 7 bankruptcy estate. The chapter 7 case was reopened to give the pre-bankruptcy creditors an opportunity to receive their share of the estate property by filing a proof of claim. Only one creditor, Fred Martinez, availed himself of that opportunity.

4) *The settlement recovery funds paid to the Chapter 7 Trustee were properly accounted for*

The evidence establishes that all funds from the settlement recovery received into the chapter bankruptcy estate were properly accounted for. The Chapter 7 Trustee scrupulously accounted for every penny he received and every penny he disbursed. Fees and costs disbursed to the Askew & White firm and to the Chapter 7 Trustee were paid pursuant to court order.[68] Attorney received no funds disbursed directly by the Chapter 7 Trustee from this chapter 7

---

[68] *See* Doc. 48, Doc. 49, and Doc. 53.

-24-

bankruptcy estate. All fees, costs and applicable gross receipts taxes Attorney received, were disbursed by Omni (the ASF Settlement Trustee) directly to Attorney in accordance with the confirmed Plan in the ASF bankruptcy case and the ASF Settlement Trust. Omni calculated the amount based on the Fee Agreement between Mr. Carrillo and Attorney and the fee agreement between the Chapter 7 Trustee and Attorney, which provided for a single payment to Attorney of 33 1/3 % of the gross amount recovered, plus costs and expenses, plus applicable gross receipts taxes on fees and costs.[69]

*Attorney did not fail to protect Mr. Carrillo, fail to
keep him informed, or fail to act in his best interest*

Finally, Mr. Carrillo contends that his Attorney did not protect him, failed to keep him informed, and failed to act in his best interest in breach of Attorney's fiduciary duty. Again, the evidence does not support Mr. Carrillo's claims. Attorney represented Mr. Carrillo in the ASF bankruptcy case. Her efforts allowed Mr. Carrillo to participate in the settlement reached in the ASF bankruptcy case even though he had received $40,000 in full settlement of his claim prior to the filing of the ASF bankruptcy case. Both Attorney and her paralegal, Esther Lopez, testified that they made every effort to communicate with Mr. Carrillo throughout Attorney's representation of Mr. Carrillo and after the settlement was reached, meeting with him in person and by telephone, even sharing their personal cell phone numbers with him so he could reach them as needed. The Court finds and concludes that such testimony is credible. No evidence to the contrary was presented to the Court.

In the Motion for Immediate Relief, Mr. Carrillo cited several cases as "precedents" that he believes entitle him to the relief he has requested.[70] Mr. Carrillo is correct that the rules of

---

[69] *See* Exhibit A.
[70] The Court was unable to locate the cases based on the case citations Mr. Carrillo recited in the Motion for Immediate Relief. The case citations do not appear to be valid.

professional responsibility require attorneys to scrupulously account for client funds. *See,* NMRA 16-115 ("A lawyer shall hold property of clients . . . that is in a lawyer's possession in connection with a representation separate from the lawyer's own property."). However, no evidence has been presented to this Court that Attorney misappropriated Mr. Carrillo's settlement funds or failed to safeguard client funds entrusted to Attorney. To the contrary, Attorney did not receive any of Mr. Carrillo's net settlement funds. Attorney was paid attorney's fees, costs, expenses, and associated gross receipts taxes directly from Omni. Such fees were calculated based on the Fee Agreement that Mr. Carrillo signed (to which the Chapter 7 Trustee also agreed) and the gross settlement amount determined in accordance with the Tort Claims Allocation Protocol. No evidence was presented to the Court that Attorney breached her fiduciary duty to Mr. Carrillo in any way.

The Court will enter a separate order consistent with this Memorandum Opinion denying the Motion to Recover Settlement Funds.

_Robert H. Jacobvitz_
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: May 2, 2025

COPY TO:

Leroy Carrillo
Barbara Carrillo
5739 Isleta Boulevard SW
Albuquerque, NM 87105

Philip J. Montoya
Chapter 7 Trustee
1122 Central Ave. SW, Suite 3
Albuquerque, NM 87102-2976

Carolyn M. "Cammie" Nichols
Special Counsel
Rothstein Donatelli, LLP
500 4th Street NW, Suite 400
Albuquerque, NM 87102